STATE OF IOWA, Appellee, v. BEN HENDERSON, Appellant.

CRIMINAL LAW: Plea—Withdrawal of Plea. The right to withdraw a plea of guilty at any time before judgment is an absolute right, and it matters not that the plea was a written one under the County Attorney Information Act.

*Appeal from Winneshiek District Court.*—W. J. SPRINGER, Judge.

APRIL 1, 1924.

AN information by the county attorney was filed, charging defendant with bootlegging. He entered a plea of guilty, but before judgment he withdrew his plea of guilty, or asked to do so, and to substitute a plea of not guilty, but the court refused to permit it. Thereafter, judgment was pronounced that he pay a fine of $350 and costs and be imprisoned in the county jail until said fine and costs were paid, at the rate of three and one-third dollars for each day's confinement, and that he be confined in said jail at hard labor for a period of eight months. In the same judgment, the liquor seized from defendant's auto-

mobile was ordered destroyed and the alcohol turned over to the hospital, and it was ordered that the automobile be confiscated and sold. Bond on appeal was fixed at $2,000, and bond for the possession of the automobile was fixed at $1,700. The defendant appeals.—*Reversed.*

*E. R. Acres* and *F. E. Withrow,* for appellant.

*Ben J. Gibson,* Attorney-general, and *J. A. Nelson,* County Attorney, for appellee.

PRESTON, J.—In the evening of August 8, 1923, the defendant, accompanied by his wife and another man in an automobile, was seen on the road near Decorah. They were overtaken, and the defendant and his wife was arrested by the marshal. When they were overtaken, defendant said he had 10 gallons of alcohol in the car. The officers could see it through the car window. The officers had no search warrant or warrant for the arrest. Defendant and his wife were arrested and taken to jail. The liquor was unloaded from the car, and there were found 20 gallons. of alcohol and a case of whisky,—22 pints. The next morning, August 9th, defendant and his-wife were taken to the county attorney's private office. The defendant was not represented by attorney. After some conversation at the county attorney's office, defendant was taken before a magistrate, where a preliminary information was filed, and defendant and his wife were bound over to the grand jury for the next term of court.

There is little dispute in the evidence as to what took place in the county attorney's office, except as to one point. The substance of what occurred there, as stated by the county attorney and another person who was present, is that:

"When they were first brought in, they were introduced to me, and I shook hands with them. Tavenir said, 'These are the people I found the liquor on last night,' and I began to ask him where he had his liquor, and he said it was in his car. I asked him if he brought it here to sell, and he said he did not. I asked him if he brought it here to dispose of, and he said, 'Well, I suppose I did.' I read the statute on punishment and misdemeanors, and also referred to the statute on confiscating his automobile. I asked him if he wanted the matter disposed of

now; that the judge was here; and if so, I could get him on, perhaps, or we could let it go over to the September term of court. He said he would sooner have it disposed of now, and have it over with. I asked him how much money he had, and he told me $200. I told him perhaps he would need more. He wanted to know something about what the punishment would be. I told him that was up to the court. I told him we would go over and have a preliminary hearing. * * * Then I went to the courthouse with him. I had explained to them at the office about the attorney's information in vacation. I drew up a written plea of guilty, and asked Henderson to read it carefully before signing; and the court asked him if he knew what he was signing.''

After the preliminary information was filed before the magistrate, and on the same day, the county attorney's information was filed, properly indorsed, and approved by the judge. No warrant was issued upon the information, but defendant appeared in person before Judge Springer at the court room in the courthouse, and the written plea of guilty was filed, as before stated. It was ordered that ''defendant is guilty of bootlegging, as charged in the information.'' The defendant's wife was released from custody. The case was continued until the next day, and defendant was taken back to jail.

Defendant claims that he was induced to sign the plea of guilty by reason of promises made by the county attorney. Defendant testifies in regard to this, in substance:

''We started with the marshal to the county attorney's office. We went to his office. The marshal and the sheriff and the railroad man got up and left the room. The county attorney asked me if I had that liquor in my possession, and I told him I did. He said it was a serious case; 'if the Federal officers got hold of it, you will lose your car.' We talked the thing over. First he asked me how much money I had, and I told him around $200, and he asked me if I could get more. I said, 'I can,' and he said, 'You may need it.' He said there was a case coming up then. He said: 'I think if you plead guilty, you can take your car and get out of town, and pay a fine.' I believed what he told me. I thought he had the power of carrying out his promise of paying the fine and getting out of town, and

I relied on that promise. I would not have pled guilty if he had not made those promises to me. Then the sheriff and the others came back, and he said I would have to go over to the justice office in another building. We sat down, and the prosecuting attorney was there with us, making out some papers, and said something about we would come up before the grand jury on September 17th, and the county attorney spoke up and said, 'No, we have a plea of guilty.' He said, 'Oh, that is different then.' Then we came downstairs, my wife and I and the county attorney and the railroad man; went to the courthouse. What we said up in Nelson's office was very pleasant and friendly. * * * When we came down out of the magistrate's office, I went in and bought a cigar, and bought one for Mr. Nelson, and he took it, and thanked me. I didn't know anything about a preliminary hearing. Never heard of one before. Didn't know it was necessary. When we got to the courthouse, we sat down. The court was attending to some other matter. Mr. Nelson handed us a paper, and said, 'I want you to sign this plea.' Then the court read it, and asked us if we knew what we were signing. I said I did. Then the county attorney said, 'I think we ought to try and confiscate the car, unless we have awful good reasons for not doing so.' That was after I had signed the plea and had handed it to the judge. That was the first intimation we had that the county attorney was not going to carry out his promise, when we heard him talking to the court about the car. I thought it looked funny. The court said he would have to take some time to think my case over, until the morning of the 10th.''

The county attorney as a witness denies that any promises were made, and says that defendant's evidence is slightly colored, and that it was colored for the benefit of defendant. Another witness who was present part of the time testifies that no promises were made.

The case was continued until the morning of the 10th, at which time defendant appeared in person and with Mr. Acres, his attorney, and asked leave to withdraw his plea of guilty, and leave was refused, and the cause continued until August 11th, at 9 o'clock. On the 11th, defendant and his attorneys appeared, and the county attorney appeared for the State. At

this time, counsel for defendant stated to the court that the county attorney had told defendant that, if he would plead guilty, he and his wife would simply pay a fine and go home, and take their auto with them. The court then stated that:

"There is nothing here at this time to be heard, except evidence in relation to the mitigation of sentence. That is the only thing in this case left to be done.

"Mr. Acres: In view of everything, we again ask the court to set aside the plea and try the case before a jury in the regular way.

"Court: I will not do that. These people came in here before this court and signed a written plea of guilty, and asked this court here for judgment.

"Mr. Acres: But you didn't know all there was to that. It is defendant's claim that the plea of guilty was taken through misrepresentation."

Thereupon the court stated that he thought defendant liked Decorah, and expected he would give defendant an opportunity to stay there and get acquainted, and further:

"Have your witnesses here, and the reporter will be here. Get your record, and let it go at that. We will go through with this thing."

The case was again continued until August 14th.

Up to this point, there had been no judgment of record, and no intimation from the court as to what the fine would be, or the length of imprisonment, or what would be done with the automobile. On the 14th, all parties appeared, and the following proceedings were had:

"Mr. Acres: The defendant again calls the attention of the court to the fact that no judgment has been entered of record, and there has been no finished judgment pronounced, and defendant again at this time at this hearing asks leave to withdraw his plea of guilty, for the purpose of substituting a plea of not guilty."

There appears to have been no ruling at this time on the defendant's request. Evidence was taken for the most part in regard to what took place in the county attorney's office as to promises and so on, although some evidence was taken as to the

seizure without warrant and the amount of liquor found. At the close of the evidence, judgment was pronounced.

1.   It is first contended by the State that defendant's application to withdraw the plea of guilty came too late, because the court had passed judgment by informing defendant that he would be imprisoned, etc.   We do not so read the record.   At three separate times, defendant requested leave to withdraw his plea of guilty.   As said, the court at no time had stated the amount of fine or the length of imprisonment.   The same point was raised in *State v. Hortman,* 122 Iowa 104, 109, and the point was decided adversely to the contention of the State.

2.   It is also contended by the State that, under the statute, Code Section 5337, it is a matter of discretion whether the court will permit the withdrawal of a plea of guilty.   A number of cases from other jurisdictions are cited to support the contention.   But in some of the cases where it is held to be a matter of discretion, it is said that a plea of guilty should be freely and voluntarily made and entered by the accused, without any semblance of coercion, or without fear or duress of any kind; that the withdrawal should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting "not guilty" to be pleaded in its place; and that the least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient cause to permit a change of plea.   20 A. L. R. 1450, and cases cited in note.

The instant case is quite like the *Hortman* case, supra, in many respects.   The question was fully considered in the *Hortman* case, and our earlier cases were discussed.   Reference was made to acquiescence of the law-making power in the earlier decisions.   See, also, *State v. Kraft,* 10 Iowa 330; *State v. Oehlshlager,* 38 Iowa 297; *State v. Farlee,* 74 Iowa 451.   We think that the instant case is ruled by these cases.   The holdings therein are contrary to the contention of the State.   We are of opinion that the trial court erred in not permitting the defendant to withdraw his plea.

3.   The State further contends that the statute does not apply, and does not permit the defendant to withdraw his plea of guilty to a county attorney's information; that the section

refers to pleas to an indictment only. It is thought that the sections of the statute in reference to informations by county attorneys contain a separate and complete system of criminal procedure. In this we cannot concur. The fact that there was a written plea is not controlling. That could be done under an indictment. We are inclined to the view that there is greater reason for permitting a withdrawal under an information than under an indictment. When an information such as this is filed, it must be permitted and approved by the court or judge. We are of opinion that the information merely takes the place of an indictment. To that extent the procedure is complete. However, in case of a trial to a jury, as to the judgment, rules of evidence, and so on, we must look to other provisions of the statute, and they are the same, whether the proceedings are under such an information or under an indictment.

The defendant is not discharged. Adequate, but not unusual, punishment may be inflicted after a conviction in accordance with law. We must at all times keep in mind that law is for the protection of the innocent, as well as for the punishment of the guilty. Rules must be laid down for all cases. Though it may appear that those opposed to the prohibitory law and engaged in violating it are proceeding in a sort of frenzy, the courts should at all times maintain the proper poise, meting out adequate punishment after impartial and legal hearing.

The defendant makes the further contention that the judgment was excessive, and that the trial court should have sustained his motion to release the automobile because it was seized without a warrant. As to the first of these propositions, because of the reversal on another ground, we deem it unnecessary to discuss it. As to the other point, the State contends that the evidence as to search and seizure went in without objection, and that the question is not before us. The State also contends that defendant did not pursue the proper method under the statute. However this may be, the order of confiscation is included in the one judgment. The entire matter is remanded for further proceedings in harmony with this opinion and in accordance with law.—*Reversed and remanded.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.